## FOX v CINCINNATI (city) et

Ohio Common Pleas, Hamilton Co

Decided Aug 1, 1936

Frost & Jacobs, Cincinnati, for plaintiff.
John D. Ellis, City Solicitor, Cincinnati, and Henry M. Bruestle, Asst. City Solicitor, Cincinnati, for city of Cincinnati.
Tallentire & Barber, Cincinnati, for Mack International Truck Corp.

## OPINION

By MACK, J.

In December, 1935, the city of Cincinnati advertised inviting bids for the purchase by it of three auto-combination pumping engines and hose wagons, and one eighty-five feet auto aerial ladder truck for use of its fire department. The bid of Mack International Motor Truck Corporation for all of said apparatus at a total of $55,677 having been accepted and a contract entered into with it for such purchase, instant action was commenced by plaintiff as a taxpayer, after demand upon the city solicitor and his refusal to bring the same. The petition prays for an injunction against carrying out and performing said contract, and restraining the city auditor from drawing a voucher for said amount, and the city treasurer from paying the same.

Concisely stated, it is the claim of plaintiff that the specifications for said apparatus were so drawn as to prevent competitive bidding and precluded defendants from receiving bids for such equipment, so as to determine which is the best equipment considering the price bid. It is specifically alleged that the specifications were so drawn "as to completely exclude any competitive bidding by manufacturers or vendors of the above mentioned equipment, excepting one, to-wit, Mack International Motor Truck Corporation, which is the only company that could comply in all respects with said specifications."

There being a denial that the specifications were drawn so as to exclude competitive bidding, the cause has been heard upon the evidence and numerous exhibits, and was argued by counsel and submitted

upon such arguments and briefs. There being no claim of fraud or collusion on the part of the officials of the city of Cincinnati, determination of this controversy is dependent solely upon the ascertainment whether the specifications for the apparatus in question were so drawn as to prevent competitive bidding as such, rule has been recognized and applied. A wide latitude was permitted in the introduction of evidence, so that in any event a re-trial of the cause will not be necessary, even if the conclusions reached by this court may be reviewed, reversed or modified by an appellate court.

A clearer appreciation of the grounds upon which the conclusions reached by this court are founded will be had by referring preliminarily to the following matters:

In the use of apparatus for the extinguishment of fires, Cincinnati from its earliest days has always been in the forefront and has constantly endeavored to avail itself of every practical suggestion for increasing efficiency in the use of such apparatus, economy in its maintenance, and celerity in its use. This is a matter of common knowledge which may be refreshed by reference to Howe's "Historical Ohio," and Greve's "Centennial History of Cincinnati." Those writers trace the local fire department through the various stages from the voluntary bucket brigade to the voluntary hand pumper, to the first steam fire engine used by a fire department, which was built for Cincinnati in 1852, called the "Uncle Joe Ross."

When those writers indited their works the last word was the smoke and flame belching engine drawn through the streets of the city by galloping horses, and followed by the hose reels, and the long carriage upon which were numerous ladders. Since their day and generation we have advanced to motorized apparatus of increased capacity and the aerial ladder. Nor must it be overlooked that since such day traffic upon streets has been increased in a tremendous degree, that there are overhanging wires of all sorts, that the skyscraper era has arrived, and that a high water pressure system has been installed. The largest manufacturers of fire apparatus in the United States are the following companies: American LaFrance, Seagrave, Ahrens-Fox and Mack International Motor Truck Corporation.

Ordinarily cities and towns are offered fire pumping apparatus of capacities of 500, 600, 700 and 1000 gallons per minute. Ordinarily aerial ladders are offered, which when raised extend 65, 75, 85 feet, or possibly higher in some cases.

Manufacturers of fire apparatus have designated as certain models or types apparatus offered for sale by them and have illustrations of the same. From the exhibits in present case it appears that such companies also have their own specifications, etc., which accompany the offering of such apparatus.

W. ...ckner, master mechanic of the Cinc...nati Fire Department, developed a rachet lock for the ladder turntable for the aerial truck, and same has been applied by such fire department to previously purchased trucks, as well as specified when inviting bids for the aerial truck in question herein. Likewise, a ground jack was specified, on account of its added safety, in the use of aerial trucks.

Experience has shown that if bids are invited for fire apparatus simply by stating certain pumping capacity, or length of aerial ladders, leaving to the bidder the furnishing of detailed specifications accompanying an offering of such apparatus, there will always be the question of determining the "lowest and best bid," because of the necessary discretion or judgment that must be exercised by the purchaser in such cases.

The choice in such event necessarily invites a comparison of the bidder's apparatus by the purchaser, and the award depends upon the purchaser's own views; obviously an exercise of discretion or judgment.

Previous to the purchase of fire apparatus under consideration the city of Cincinnati on April 11, 1934, invited bids for one combination pumping engine and hose wagon and one 85 feet auto aerial ladder truck, and on December 12, 1934, invited bids for three combination pumping engines and hose wagons and one 85 feet aerial ladder truck. Upon both of those occasions Mack International Motor Truck Corporation was the successful bidder. Upon the December 12, 1934, occasion The Ahrens-Fox Company was an unsuccessful bidder.

On those occasions, as well as the one under consideration, the city, instead of specifying booster brakes for both kinds of apparatus, specified Westinghouse air brakes.

Examination of the various specifications conclusively demonstrates the desire of those preparing the specifications for the Cincinnati Fire Department to add as time progresses additional elements for safety of those compelled to rapidly operate the apparatus through the streets of the city,

additional factors of celerity in the raising and lowering of the aerial ladders and mechanism indicating the over-taxing of the required operation of the apparatus.

After a most attentive hearing, a careful perusal of the testimony, full consideration of the elaborate briefs of counsel for the parties herein, the court has reached the positive conclusion that the equities of the case are not with the plaintiff; that plaintiff has failed to sustain the ▆▆▆▆▆▆▆ ▆ allegations of his petition, and that any injunctive relief herein should be denied the plaintiff.

The propenderating, clear and convincing evidence shows that the specifications in question were prepared solely for the purpose of giving to the city of Cincinnati the most advanced apparatus that experience and foresight could suggest, and that the specifications were not drawn with a view to prevent full and fair competition. Upon the contrary, the court is of opinion that reduced to its last analysis the complaining manufacturers are seeking to have the city of Cincinnati, in the purcha e of fire apparatus, confine the invitation for bids to apparatus of a specified capacity or dimension, thus leaving to the manufacturers the offering of their own specifications and having the award of bids determined upon the exercise of judgment as to which apparatus meets the requirements of the "lowest", and "best bid.".

We are of opinion that this case is not to be determined by whether one of several manufacturers can the more easily adjust his ordinary models or types ▆▆▆▆▆▆▆ ▆ to the required specifications of the city of Cincinnati, but whether the specifications in question were drawn for the purpose of making the award to the Mack International Motor Truck Corporation, and excluding any competition by other manufacturers.

It would unnecessarily lengthen this opinion to detail the evidence leading to the court's conclusion.

Chief Houston, the very efficient head of the Cincinnati Fire Department, clearly demonstrated in his evidence the reasons why certain mechanism was prescribed for safety, economy and celerity in the operation of the fire apparatus to be purchased by the city.

Mr. Dykstra, the city manager, stated:

"I conceive it the duty of the city manager to be sure we have the most modern, latest fire apparatus, so we will be as nearly abreast of the times as can be in years to come, and we do not want in our fleet apparatus which is tending to become obsolete."

Chief Houston testified with reference to the preparation of the specifications:

"Securing equipment for the protection of the city and to keep abreast of the times, it is necessary probably to make minor changes in specifications to get the latest and best equipment manufactured to date."

The following provisions of the General Code of Ohio declare the principles with reference to competitive bidding applicable to instant case:

Sec 3811, GC, provides:

"No municipal corporation shall adopt plans or specifications for a public improvement required by law to be made by contract let after competitive bidding, which requires the exclusive use of a patented article or process, protected by a trademark, or an article or process wholly controlled by any one person, firm or corporation, or combination thereof."

Sec 4328, GC, provides that expenditures exceeding five hundred dollars shall be authorized by ordinance of council, and when so authorized, shall be made on written contract with the lowest and best bidder after advertisement.

Sec 4371, GC, provides that any contract for the purchase of engines, apparatus and other supplies necessary for the fire department involving an expenditure of more than five hundred dollars shall be authorized by council and shall be governed by the provisions of the preceding chapter namely chapter 8.

McQuillan on Municipal Corporations, 2d ed., Vol. 3, §1286, well states the purpose of requiring competitive bids as follows:

"Such requirements are for the purpose of inviting competition, to guard against favoritism, improvidence, extravagance, fraud and corruption in the awarding of municipal contracts, and to secure the best work or supplies at the lowest price practicable, and are enacted for the benefit of property holders and taxpayers, and not for the benefit or enrichment of bidders, and should be so construed and administered as to accomplish such purpose fairly and reasonably with sole reference to the public interest."

Moag v Cleveland, 18 N.P. (N.S.) 49, relied on by plaintiff, is inapplicable because

the evidence herein wholly fails to sustain any claim that the specifications herein require articles controlled by a single bidder. Upon the contrary, the convincing evidence, in our opinion, shows that every manufacturer, equally with the Mack International Motor Truck Corporation, could comply with the specifications at reasonable and justifiable outlays.

**Fisher Auto & Service Co. v Cincinnati, 16 N.P. (N.S.) 369,** also cited by plaintiff, is a case where the chief of police desired to purchase a Hudson auto. The specifications were drawn exactly as contained in the catalogue of the Hudson Motor Co. Clearly in that case there was no opportunity for competition.

It follows from all the foregoing that in the opinion of the court the petition of plaintiff herein should be denied and dismissed at the costs of plaintiff.